UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| Jennifer Griffin,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>Rapid City Area School District, Rapid City School Board, South Dakota Department of Education and Mike Talley,<br><br>　　　　　　　　Defendants. | Civ. 24-5018<br><br>**COMPLAINT** |

COMES NOW, Plaintiff. Jennifer Griffin, by and through her undersigned attorneys, and for her complaint against Defendants, states and alleges as follows:

## **JURISDICTION**

1.　　This court has federal question subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1343.

2.　　This Court also has pendent jurisdiction to adjudicate any state claims, which may arise out of the same facts as the federal claims asserted herein pursuant to 28 U.S.C. § 1367.

3.　　This is an action involving claims which are, individually, in excess of Seventy-Five-Thousand-Dollars ($75,000 exclusive of interests and costs).

## **VENUE**

4.　　Pursuant to 28 U.S.C. § 1391 (b), venue is proper in this judicial district because the events giving rise to the action occurred in Pennington County, South Dakota, within the

jurisdiction of this Court and Defendants are subject to the Court's personal jurisdiction with respect to this civil action.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Title IX investigation was completed and a determination of Responsibility was issued September 20, 2023.

6. The U.S. Equal Employment Opportunity Commission issued a Determination and Notice of Rights on December 29, 2023.

## PARTIES

7. At all times material, Plaintiff has been a resident of Pennington County, South Dakota.

8. Upon information and belief, Defendant MIKE TALLEY is a resident of Burleigh County, North Dakota. He was the principal at Central High School until he became interim assistant superintendent in 2022. He was Plaintiff's direct supervisor.

9. Defendant Rapid City School Board (hereinafter "RCSB"), is a governmental entity, organized under the Laws of South Dakota, the governing body of the Rapid City Area School District and responsible for the control, operation, organization, management, and administration of schools in Rapid City, South Dakota.

10. Defendant Rapid City Area School District (hereinafter "RCASD") is a governmental entity, organized under the laws of South Dakota, and is part of the state system of public education including all public school, classes, courses of instruction and all services and activities which are under the School District Officials' direction and directly related to education in the district.

11. At all times material hereto, RCASD and RCSB were recipients of federal financial assistance by virtue of the receipt of funds from the United States Department of Education.

12. Central High School is a public school located in Rapid City, Pennington County, South Dakota and is one of the schools within the school system of the RCASD and RCSB. Central High School is identified for reference purposes only and is not a named Defendant in this action.

13. At all times material hereto, the RCASD's and RCSB's responsibilities included, but were not limited to: establishing, implementing and/or enforcing policies and procedures for Rapid City Public Schools, including Central High School; training, supervising and/or disciplining its employees, including administrators, investigators, principals, assistant principals, instructors, teachers, counselors, and/or aides; implementing policies, customs, and/or practices that prohibited said employees from violating the constitutional and civil rights of other employees; and training, supervising and/or disciplining its employees to ensure the welfare and safety of all other employees employed at Rapid City Public Schools, including Central High School.

14. Defendant South Dakota Department of Education, is and was at all material times, a state educational agency that manages and controls the educational affairs of South Dakota Public Schools.

## FACTS

15. Defendant Mike Talley (hereinafter referred to as Mr. Talley) was Principal at Central High School prior to becoming Assistant Superintendent.

16. Mr. Talley was Plaintiff's direct supervisor from 2011 through July of 2022, responsible for Plaintiff's annual review and progressive discipline.

17. Mr. Talley was Interim Assistant Superintendent from July of 2022 until his termination in June 2023.

18. Mr. Talley had a reputation among staff as having affairs with other staff, such as an activities director, including with his secretary and rumors of the same existed. Mr. Talley had a reputation of always getting his way; being untouchable because of his status so to speak.

19. Because of Mr. Talley's actions and demeanor, many staff referred to the Central High School as "Mike's Kingdom" and that thought he could do no wrong.

20. Mr. Talley was very flirty with female staff members and would often look at their breasts. He would "frequently make his way to offices belonging to female staff members".

21. Mr. Talley hired Plaintiff in 2011 as a counselor at Central High School. At one point, Mr. Talley's wife, Jackie Talley was Plaintiff's supervisor while Plaintiff was a school counselor.

22. In 2016, Plaintiff left her position as counselor and began teaching, and her office was then in the same building as Mr. Talley's office. It was at this point that Mr. Talley started "grooming" the Plaintiff.

23. In one instance, in 2017, Mr. Talley invited Plaintiff to an out of state conference, insinuated to Plaintiff that they would have drinks and whatever else may follow with a 'wink' in his eye. This 'plan' was thwarted when Mr. Talley's wife decided to attend the conference as well.

24. After the conference mentioned above, Plaintiff was moved to a classroom away from Mr. Talley where a different principal supervised her. Mr. Talley became hostile and angry

toward Plaintiff, and stopped making eye-contact with her and became "cold" toward her. This conduct only made Plaintiff feel worse, nervous, uncomfortable, and scared.

25. Plaintiff sought employment outside of Central and interviewed for a counseling position at East Middle School. Mr. Talley summoned Plaintiff to his office when he learned of this application. Mr. Talley was visibly displeased and informed the Plaintiff in words to the effect "you know principals talk. I told Scott Phares that I would appreciate it if he didn't hire you." Plaintiff did not get the job.

26. The plaintiff believed Mr. Talley could prevent her from bettering herself and finding a different position or getting a different job in a better environment. Mr. Talley was very intimidating.

27. Sometime during the 2017-2018 school year, Plaintiff discussed these events with two of the lead counselors and one counselor at Central High School, sharing information about inappropriate behavior, the grooming, and the hostile response on the part of Mr. Talley.

28. In the Fall 2020, Plaintiff moved back to school counseling, and began working toward an administrative (K-12 Principal) degree. Mr. Talley was once again her supervisor, and he ceased to be cold and began the obsessive behavior again, including more grooming. There was nearly constant communication throughout the school day, and Mr. Talley was seemingly always in the counseling department, often in Plaintiff's office.

29. From 2021-2022, Plaintiff was enrolled in a graduate degree program to obtain her administrative certification (EdS K-12 Principal Program). As part of this program, Plaintiff completed an internship supervised by Mr. Talley. Mr. Talley was Plaintiff's supervisor and was required to help her with assignments related to her administrative degree. Initially, Mr. Talley would refuse to help and made it extremely difficult for Plaintiff to better herself and continue towards the college degree.

5

30. During her online classes, Plaintiff would be in her office late or on weekends doing coursework so as to be without interruptions. Mr. Talley somehow knew when Plaintiff was in the office and would visit her when everyone was out.

31. In November or December 2020, Mr. Talley made one of these visits to Plaintiff and sat right next to her (even though there was a chair adjacent to her). At the end of the visit, Mr. Talley gestured that he wanted a hug goodbye. Plaintiff complied. The hug was long and uncomfortable for Plaintiff. Mr. Talley attempted to kiss her, and Plaintiff turned her head, rejecting the kiss.

32. These visits continued, and Mr. Talley continued to groom with more personal and prying conversations. At one point, in January of 2021, Mr. Talley told Plaintiff that he had a vasectomy.

33. In February of 2021, staff counselors were to travel to North Middle School for 8th grader registration counselor visits and, even though principals did not normally attend, Mr. Talley decided to go. Mr. Talley offered to give the Plaintiff a ride but Plaintiff made sure she was not alone with Mr. Talley and was not comfortable riding in Mr. Talley's vehicle to North Middle School. At the school, Mr. Talley grabbed Plaintiff 's hand and pulled her toward him as though he was either going to hold it or bring it to his mouth and kiss it, while looking Plaintiff in the eyes; Plaintiff pulled her hand away quickly in embarrassment. Mr. Talley did this in front of Plaintiff's counselor colleagues (unclear if they saw), who were present.

34. On March 9, 2021, Mr. Talley came to Plaintiff's office and motioned for her to come over to him to grab a note he had in his hand. When Plaintiff was close, Mr. Talley forcefully kissed Plaintiff. During his kiss, the fire alarm went off as part of a planned fire drill. Mr. Talley said to Plaintiff "I want more of that" and as the fire drill continued, and once everyone else was out of the building, Mr. Talley put his hands up Plaintiff's shirt and down her

pants, digitally penetrating her. Later that day, Mr. Talley again came into Plaintiff's office and initiated sex.

35. After this March 9 incident, Plaintiff hesitated and was afraid to report the incident as she felt Mr. Talley would get only a slap on the wrist and go back to treating Plaintiff negatively as he had done in the past.

36. After the first incident, the grooming behavior ceased, but Mr. Talley having opened the door, continued to initiate sex. These encounters took place several times between March 9, 2021 and April 3, 2023. Mr. Talley initiated sex in Jenny's office, his office, one of the classrooms at Central High School, in a meeting room, in a training room, and in an extra-large office at Rapid City High.

37. Mr. Talley warned the Plaintiff that she cannot tell anyone or her career would be over and that she would never get a job again.

38. When Plaintiff began applying for alternative jobs, Mr. Talley did not write a letter of recommendation for her, despite her evaluations being distinguished and despite Mr. Talley having written similar letters for others. Mrs. Talley also continued to be hostile toward Plaintiff, and Plaintiff was told that Mrs. Talley prevented her from obtaining assistant principal positions at North Middle School.

39. Mr. Talley was placed on administrative leave on April 21, 2023. Despite being absent, he continued to pressure Plaintiff to keep things secret.

40. The Plaintiff never wanted any of this and felt like "she had to" comply with Mr. Talley's requests in order for her to do her job. Mr. Talley was her direct supervisor and Plaintiff needed Mr. Talley's cooperation, especially during the time Plaintiff was fulfilling the requirements for her internship. Plaintiff believes that Mr. Talley and his wife, Mrs. Talley prevented her from other employment opportunities within the district.

41. Mr. Talley's employment with the Defendant School District was terminated on June 30, 2023.

42. Every time after Mr. Talley initiated sex, the Plaintiff suffered through periods of suicide ideation. She would be anxious about the next time Mr. Talley would show up. Every time Plaintiff would hear a male voice that sounded like Mr. Talley's she would experience increased heart rate, adrenaline rush, and fight/flight response.

43. Eventually Plaintiff developed hypertension due to the constant stress. Plaintiff's marriage has suffered and is in disarray. The Plaintiff no longer wants to be touched, is easily irritable with her children and her children do not seem to want to interact with her as much anymore. Plaintiff's life has been turned upside down.

## **VIOLATION OF TITLE IX, EDUCATION AMENDMENTS OF 1972 - 20 U.S.C. §1681 ET SEQ.**

44. Plaintiff incorporates by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

45. At all relevant times, Rapid City School District received federal financial assistance.

46. Plaintiff had a right to not be subject to sexual discrimination, harassment or abuse while she worked for Rapid City School District.

47. Rapid City School District had actual notice that Mr. Talley was sexually harassing female staff and posed a grave danger to female staff in the school of further sexual harassment and abuse, prior to the time that Plaintiff was sexually abused by Mr. Talley.

48. The prior complaints to other employees and administrators of sexual harassment by Mr. Talley from Plaintiff, alerted Rapid City School District agents and officials to Mr. Talley's sexual harassment and sexually inappropriate behavior with female staff.

49. Rapid City School District agents and officials and administrators with actual notice, had authority to institute corrective measures on behalf of Rapid City School District in response to the danger posed by Mr. Talley.

50. Upon information and belief, the decisions of Rapid City School District, after receipt of actual notice of sexual harassment by Mr. Talley, to allow Mr. Talley to continue in his employment without instituting any corrective measures, were official decisions to ignore the danger of sexual harassment or sexual abuse to the female staff in their care.

51. In response to actual notice that Mr. Talley posed a risk of sexual harassment or abuse to staff at Central High School, Rapid City School District could have instituted any of a number of corrective measures that would have prevented the sexual harassment of Plaintiff, including without limitation:

> (i) preventing Mr. Talley from having any unchaperoned conduct with a female staff on school grounds;
>
> (ii) monitoring and more closely supervising Mr. Talley's interactions with female staff;
>
> (iii) warning Mr. Talley that he could not socialize with female staff;
>
> (iv) warning female staff that Mr. Talley was the subject of complaints of sexual harassment and inappropriate behavior of a sexual nature directed toward female staff;
>
> (v) removing Mr. Talley from duties that gave him access to female staff;

(vi) taking employment action against Mr. Talley for his inappropriate behavior and sexual harassment of female staff;

(vii) investigating the allegations against Mr. Talley to determine the extent of his inappropriate behavior and sexual harassment; or

(viii) any such other action reasonably intended or designed to protect the female staff at Central High School from sexual harassment by Mr. Talley.

52. Despite receipt of actual notice, Rapid City Area School District, and its agents and representatives, acted with deliberate indifference in failing:

(i) to take any action to prohibit Mr. Talley from having unsupervised and unobservable access to female staff;

(ii) to warn female staff about the allegations against Mr. Talley;

(iii) to remove Mr. Talley as a Principal or Interim Superintendent;

(iv) to otherwise restrict Mr. Talley's access to female staff; or

(v) engage in any other corrective measure to prevent Mr. Talley from sexually harassing female staff at Central High School, including Plaintiff.

53. As a result of this gross failure to act, Plaintiff was sexually harassed and sexually abused by Mr. Talley.

54. As a direct result and moving force behind the sexual discrimination, harassment and abuse described herein, Plaintiff has suffered severe and permanent psychological and physical injuries, mental anguish, pain and suffering, and loss of enjoyment of life.

**14th Amendment Equal Protection Violation of 42 U.S.C. § 1983**

55. Plaintiff incorporates by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

10

56. This count is brought pursuant to Title 42, U.S.C. (section) 1983.

57. This is a civil rights action for money damages arising from the Defendants' deprivation, under color of law, of Plaintiff's right to equal protection of the law under the Fourteenth Amendment to the United States Constitution and Article VIII, Section 1 of the South Dakota Constitution.

58. Plaintiff is a woman, and was subjected to disparate treatment by defendants because of her sex.

59. The sexual harassment was committed by Mr. Talley when he had supervisory authority.

60. Defendants violated Plaintiff's constitutional right by:

a. Failing to establish, implement or enforce policies and/or procedures within the RCASD, so as to allow a custom, policy or practice to exist wherein RCASD employees, including Mr. Talley, deliberately violated the constitutional and civil rights of other employees, including Plaintiff;

b. Failing to establish, implement or enforce policies and/or procedures within the RCASD regarding training, supervising and/or disciplining RCASD employees including administrators, investigators, principals, assistant principals, instructors, counselors and/or aides in the reporting of sexual harassment, so as to allow RCASD employees, such as Mr. Talley, to deliberately violate the constitutional and civil rights of other employees, including Plaintiff;

c. Failing to adequately and appropriately respond to reports of sexual harassment within the RCASD, including at Central High School, so as to allow deliberate constitutional and civil rights violations against employees, including Plaintiff;

  d. Failing to adequately train and/or supervise RCASD employees including administrators, investigators, principals, assistant principals, instructors, counselors and/or aides to identify and properly report instances of sexual harassment so as to allow deliberate constitutional and civil rights violations against employees, including Plaintiff;

  e. Overlooking, ignoring, and/or disregarding sexual harassment within the RCASD so as to allow a custom, policy and/or practice to exist wherein RCASD employees, including Mr. Talley, deliberately violated the constitutional and civil rights of other employees, including plaintiff;

  f. Cultivating a culture and atmosphere of intimidation within the RCASD wherein RCASD employees including administrators, investigators, principals, assistant principals, instructors, counselors and/or aides feared stopping, assisting with, or reporting constitutional and civil rights violations of its employees, including Plaintiff;

  g. Authorizing, encouraging or instructing RCASD employees including administrators, investigators, principals, assistant principals, instructors, counselors and/or aides not to stop, assist with, or report constitutional or civil rights violations of employees, including Plaintiff; and/or

  h. Failing to investigate rumors and reports of sexual harassment which implicitly encouraged RCASD employees, including Mr. Talley, to continue in their abuse.

  61. Defendants' failure to correct the disparate treatment of women, including Plaintiff, rose to the level of a longstanding custom, policy or practice of the Defendants to tolerate or ignore the same, by tacitly authorizing, or being deliberately indifferent to, the

unconstitutional conduct which Defendants had actual or constructive knowledge was occurring at the school.

62. Defendants' failure to establish, implement or enforce policies and/or practices within the RCASD that allowed for the equal treatment of women rose to the level of a custom, policy, and/or practice of the Defendants to hide, or turn a blind eye to, constitutional violations against said women, including those violations inflicted upon Plaintiff.

63. Defendants were deliberatively indifferent to, permitted and/or tolerated a historical pattern and practice of disparate treatment of women, such as Plaintiff, which was unjustifiable by any governmental interest as well as shocking to the conscience.

64. Defendants' disparate treatment of Plaintiff served no legitimate governmental purpose and there exists no rational basis for the difference in treatment.

65. Defendants' policy, custom and/or practice of violating Plaintiff's right to equal protection under the laws was the direct and foreseeable cause of Plaintiff's damages, pain and suffering loss of enjoyment of life, post-traumatic stress disorder, loss of earning potential and past and future medical expense.

**Title VII of the Civil Rights Act of 1964, as codified, 442 U.S.C. §§ 2000e to 2000e-17 and South Dakota Human Relations Act**

Hostile Work Environment – Sexual Harassment

66. Plaintiff incorporates by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

67. Defendants created a hostile and abusive work environment in that the sexual harassment in the workplace was unwelcomed by Plaintiff.

13

68.  Such harassment was based upon the sex of Plaintiff.

69.  The harassment was sufficiently severe or pervasive to alter the Plaintiff's conditions of employment and created an abusive work environment.

70.  The 7 year long harassment of Plaintiff by Mr. Talley (Plaintiff's supervisor) is imputable to his employer, as they knew or should have known about the harassment and failed to take appropriate corrective action.

71.  As a result, Plaintiff is entitled to damages as more fully described below.

## Quid Pro Quo Sexual Harassment

72.  Plaintiff incorporates by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

73.  Plaintiff is a member of a protected class in that she is female.

74.  Plaintiff was subjected repeatedly to unwelcome sexual advances from Mr. Talley, who appeared to, and represented that, he had authority to influence vital job decisions, and such sexual advances were expressly or impliedly linked by Mr. Talley to tangible aspects of Plaintiff's employment.

75.  As a result, Defendants engaged in quid pro quo harassment, and Plaintiff is entitled to damages as more fully set forth below.

## Failure to Act

76.  Plaintiff incorporates by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

77.  The aggravated discriminatory and sexually harassing conduct of Defendants was clearly denigrating to Plaintiff on the basis of her sex.

78.  When such instances of aggravated discriminatory conduct occur, the employer must take swift and decisive action to eliminate such conduct from the workplace.

14

79. Defendants were, upon information and belief, aware of Mr. Talley's pattern of lewd and egregious behavior toward females in the workplace for a long period of time, and wholly failed to take swift and decisive action to eliminate his behavior from the workplace.

80. As a result of Defendants' failure to act, Plaintiff suffered and is entitled to damages as more fully set forth below.

### Threats or Reprisals

81. Plaintiff incorporates by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

82. Mr. Talley threatened Plaintiff after he was put on administrative leave that she wouldn't be able to get a job if she told anyone about the sexual harassment.

83. As a result, Defendants threatened to engage in reprisal, and Plaintiff is entitled to damages as more fully set forth below.

### **Negligence**

84. Plaintiff incorporates by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

85. This count is brought pursuant to the common law of the State of South Dakota.

86. Defendants, and each of them, owed a duty to Plaintiff to provide her a reasonably safe, secure work environment, free from fear of retaliation; free from fear of coercion, unwanted sexual contact, and harassment; free from violations of her civil rights as a person and as a woman.

87. Defendants breached their aforementioned duty to Plaintiff as described more fully herein.

88. As a direct and proximate result of the aforementioned negligent acts of Defendants, and each of them, Plaintiff has suffered emotional and physical injuries and damages, pain and suffering, loss of enjoyment of life, post-traumatic stress disorder, loss of earning potential, and past and future medical expenses.

### Negligent Infliction of Emotional Distress

89. Plaintiff incorporates by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

90. Defendants engaged in negligent conduct as described above.

91. Plaintiff suffered emotional distress that was directly and proximately caused by Defendants' conduct.

92. Plaintiff suffered physical manifestations of the distress, including increased heart rate, adrenaline rush, fight/flight response, hypertension, and loss of sleep.

### Intentional Infliction of Emotional Distress

93. Plaintiff incorporates by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

94. Defendants engaged in outrageous and egregious conduct, which in its entirety was so extreme, outrageous, and intolerable as to offend against the generally accepted standards of decency.

95. The Defendants acted with the intent to inflict emotional distress upon Plaintiff, or in the alternative, acted with such recklessness that they knew or should have known that it was certain or substantially certain that emotional distress would result from their unlawful actions and conduct.

96. As a direct and proximate result of the Defendants' outrageous conduct, Plaintiff has suffered severe emotional distress and is entitled to actual and punitive damages.

### Assault

97. Plaintiff incorporates by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

98. Mr. Talley intended to cause harmful or offensive physical contact with Plaintiff each time he intended to initiate sex.

99. Plaintiff feared the contact would occur each time Mr. Talley initiated sex.

100. Plaintiff did not consent to sex with Mr. Talley.

### Battery

101. Plaintiff incorporates by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

102. Mr. Talley intended to cause harmful or offensive physical contact with Plaintiff each time he intended to initiate sex.

103. Such contact actually occurred between 31-50 times.

104. Plaintiff did not consent to sex with Mr. Talley.

### Damages

111. As a direct and proximate result of Defendants' wrongful conduct, as more fully described above, Plaintiff is entitled to recover, in addition to damages above, the following damages:

a. Damages for embarrassment, humiliation, annoyance, inconvenience, loss of dignity, and emotional distress;

b. Damages for severe and permanent personal injuries;

c. Punitive damages in the maximum allowable by law;

d. All attorney's fees and costs incurred in prosecuting these claims;

e. Pre-judgment and post-judgment interest;

f. Back pay and front pay;

g. Injunctive relief from all further acts of reprisal; and

h. Any and all other damages permitted by applicable law.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, in an amount to be determined by a jury, together with interest, costs, disbursements, attorney fees and such further relief as is just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to the provisions of Federal Rule of Civil Procedure 38 Plaintiff hereby demands a trial by jury of any issue triable of right by jury.

Dated this _____ day of March, 2024.

**BRADSKY, BRADSKY & BRADSKY, P.C.**

By: _____
David A. Bradsky
Adam Bradsky
927 Main Street
Rapid City, SD 57701
Tel: (605) 342-8970
Fax: (605) 342-8504
Attorneys for Plaintiff

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Jenny Griffin

**DEFENDANTS**
Rapid City Area School District, Rapid City School Board, South Dakota Department of Education and Mike Talley

(b) County of Residence of First Listed Plaintiff: **Pennington**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Pennington**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
David A Bradsky   927 Main Street, Rapid City, SD 57701
Adam Bradsky     (605)342-8970

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [X] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Other Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | [X] 448 Education | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
20 U.S.C. 1681 et seq.; 42 U.S.C. 1983; 442 U.S.C. 2000e to 200e-17

Brief description of cause:
Sexual Harassment violation of constitutional and civil rights

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: 3/28/2024

SIGNATURE OF ATTORNEY OF RECORD: *(signature)*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____